James A. WASHINGTON, Hattie P. Rivers, James L. Scott, and Beulah M. Parsons, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

AIRCAP INDUSTRIES CORPORATION, Defendant.

Civ. A. No. 2:91–3153–18.

United States District Court, D. South Carolina, Charleston Division.

Aug. 30, 1993.

Kenneth L. Childs, Columbia, SC, for plaintiffs.

Linda Wohlbruck Runge, Columbia, SC, for defendant.

## ORDER

NORTON, District Judge.

This matter is before the court on plaintiffs' motion to approve notice of class action and certify subclasses; defendant's motion for summary judgment; and plaintiffs' motion for partial summary judgment.

### I. Background

Defendant, Aircap Industries Corporation ("Aircap"), is an Ohio corporation, a wholly owned subsidiary of MTD Products, Inc., which manufactures outdoor power equipment. Aircap's Manning, South Carolina plant manufactured lawn and riding mowers. This business was cyclical and Aircap's work force varied with production demands.[1] Historically, Aircap laid off some employees at the start of the summer and rehired them at the end of the summer. During these layoff periods, Aircap paid group health insurance for affected employees. Myers deposition, at 51–52, *cited* in plaintiff's motion for partial summary judgment, at 19.

On March 6, 1991, defendant posted the following notice on all company bulletin boards regarding the anticipated summer layoffs:

> We are tentatively scheduling the plant to be closed as follows:
>
> > Monday, May 27th for Memorial Day (paid holiday).
> >
> > Thursday, July 4th for Independence Day (paid holiday) Friday, July 5th (no pay holiday)

Monday, July 22nd thru Friday, August 2nd—plant shutdown.

*Inventory:*

Plant inventory will begin Thursday, July 25th thru Saturday, July 27th. Employees who are needed for the inventory will be notified by their supervisor.

*Note:*

In order to be paid for your holiday, you must work the day before and the day after the holiday. You must also have worked for Aircap Ind. for 30 days prior to the holiday.

Plaintiffs' exhibit # 1, submitted with plaintiffs' motion for partial summary judgment.

On or about June 6, 1991, Aircap laid off approximately thirty-three employees. On June 17, 1991, Aircap instructed the workers in three departments to assemble outside the plant. A written notice was distributed to each employee, stating that he or she was being laid off, effective that day, and that the layoff would exceed six months. A fourth department was assembled in the cafeteria where a company representative verbally informed these employees that they were laid off and that the layoff would exceed six months.

### II. Subclass Certification

On January 21, 1992, this court granted plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(a). On July 8, 1992, this court created three subclasses, A, B, and C. Subclass A consists of permanent employees who were not laid off by defendant from 1986 through 1991.[2] This subclass also contains former Aircap employees hired after 1986 who were employed for more than one year and were never laid off prior to June 1991. Subclass B includes employees laid off every summer since 1986, including persons hired after 1986 who were laid off every summer after being hired. Subclass C con-

---

1. Defendant manufactured products in late fall, winter and early spring, for distribution in spring and summer.

2. Events prior to 1986 are irrelevant because MTD Products, Inc., Aircap's owner, acquired the Manning, South Carolina facility in 1986. *See* Order, filed July 8, 1992, at 6 n. 5.

sists of employees who do not come within the definition of subclasses A and B.

On September 29, 1992, this court, on plaintiffs' motion with defendant's consent, realigned the subclasses without altering subclass definitions. On October 30, 1992, plaintiffs filed an amended complaint and moved to certify subclasses A and B. Defendant consented to certification of subclasses A and B without waiving its original objection to certification.

A party seeking class certification must satisfy the following requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). This court finds that plaintiffs have established that subclasses A and B meet the requirements of Fed.R.Civ.P. 23(a).

The named plaintiffs James A. Washington, Hattie P. Rivers, James L. Scott and Beulah M. Parson are all members of subclass C. Because this court already certified these persons as representative of the entire class, it is axiomatic that these persons qualify as representatives for subclass C. This court finds that subclass C meets the requirements of Fed.R.Civ.P. 23(a) and therefore this court will certify subclass C.[3]

■ Next, this court must consider whether to certify the subclasses under Fed.R.Civ.P. 23(b)(1) or (3). This court finds certification pursuant to Fed.R.Civ.P. 23(b)(1) appropriate because

> adjudications with respect to individual members of the [sub]class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests....

Fed.R.Civ.P. 23(b)(1)(B). While neither party opposes certification pursuant to Fed.

R.Civ.P. 23(b)(1) plaintiffs correctly note that certification under this rule typically requires more than a *stare decisis* effect. *See Larionoff v. United States,* 533 F.2d 1167, 1182 n. 37 (D.C.Cir.1976), *aff'd* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) (to qualify under Fed.R.Civ.P. 23(b)(1)(B), the court's decision must as a practical matter conclude the interests of other members). However, this court is concerned with the effects of issue preclusion rather than *stare decisis.* A decision in this case would preclude defendant or a potential plaintiff from raising certain issues regarding the application of the Worker Adjustment and Retraining Notification Act to the June 1991 layoffs at the Manning plant. Therefore, this court will certify subclasses A, B and C under Fed.R.Civ.P. 23(b)(1)(B). Further, this court directs plaintiffs to resubmit proposed class notice in accordance with this order.

### III. *Standard of Review*

Defendant moves for summary judgment and plaintiff moves for partial summary judgment, pursuant to Fed.R.Civ.P. 56. To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact...." Fed. R.Civ.P. 56(c). In evaluating a motion for summary judgment, this court must view the record in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir. 1990). The judge is not to weigh the evidence himself but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The moving party is entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of genuine issues of material fact, the non-moving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce suffi-

---

**3.** For further explanation of the qualifying characteristics of subclasses A, B and C, *see* Order, filed July 8, 1992.

cient evidence to reasonably support a jury verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

> The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. The mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party].

*Catawba Indian Tribe v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992) (cite omitted). *See also Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes"). However, "[w]here states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not lie." *Overstreet v. Kentucky Central Life Ins. Co.,* 950 F.2d 931, 937 (4th Cir.1991).

## IV. *Worker Adjustment and Retraining Notification Act*

■ The Worker Adjustment and Retraining Notification Act ("WARN Act") requires employers to give affected employees sixty-day notice before mass layoffs or plant closings which would result in the termination of a large number of jobs. 29 U.S.C. § 2101 *et seq.* The purpose of the WARN Act is to

> provide[ ] protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to ad-

just to the prospective loss of employment, to seek and obtain alternative jobs, and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

WARN Act, 20 C.F.R. § 639.1(a) (1990). "WARN is a remedial statute and must be construed broadly." *Solberg v. Inline Corp.,* 740 F.Supp. 680, 685 (D.Minn.1990), *citing Belland v. Pension Benefit Guar. Corp.,* 726 F.2d 839, 844 (D.C.Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984).

Defendant qualifies as an employer for the purposes of the WARN Act. 29 U.S.C. § 2101(a)(1).[4] The operational shut-down of defendant's Manning facility qualifies as a "plant closing" for the purposes of the WARN Act. 29 U.S.C. § 2101(a)(2).[5] The statutory period under the WARN Act is from June 6, 1989 to July 5, 1989. *See* Order, filed July 8, 1992, at 2–4; 29 U.S.C. § 2101(a)(3)(B) (the WARN Act applies to employers who lay off in excess of fifty employees or at least thirty-three percent of their employees, excluding part-time employees, within a thirty-day period). Only those employees laid off during this time period are potentially entitled to protection under the WARN Act.

■ The issues before this court are whether defendant is exempt from the WARN Act because its employees are "seasonal employees;" whether, if required, notice was adequate; and whether defendant acted in good faith. Because the WARN Act was passed in 1988, its interpretation presents the court with matters of first impression.

---

4. [T]he term 'employer' means any business enterprise that employs—
    (A) 100 or more employees, excluding part-time employees; or
    (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)....

5. [T]he term "plant closing" means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-

day period for 50 or more employees excluding part-time employees....
Defendant asserts that it closed the Manning plant because the company had lost the Sears account and the customer orders from Lowes were lower than expected. Defendant's summary judgment memo, at 8; defendant's answer to amended complaint, at ¶ 51. Because defendant does not rely on the faltering company exemption, 29 U.S.C. § 2102(b) and 20 C.F.R. § 639, it is unnecessary to elaborate further on defendant's reasons for closing the plant.

As is appropriate in every case which turns on statutory construction, we begin with the language of the statute. If the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress ...

*United Mine Workers Intern., Dist. 28 v. Harman Mining Corp.*, 780 F.Supp. 375 (W.D.Va.1991) (cites omitted) (interpreting the WARN Act). Beyond the statute, this court must also consider regulations promulgated by the responsible agency.

Regulations that are substantive and promulgated by an agency pursuant to statutory authority have the force of law, unless they are irreconcilable with the clear meaning of the statute as revealed by its language, purpose, and history ... *The WARN Act specifically directed the [Department of Labor ("DOL")] to prescribe such regulations as may be necessary to carry out this Act.* 29 U.S.C. § 2107.

*Finkler v. Elsinore Shore Assoc.*, 781 F.Supp. 1060, 1064 (D.N.J.1992) (emphasis added) (cites omitted). If the regulations are not definitive, it may be appropriate to borrow definitions and factors employed by the National Labor Relations Board ("NLRB"). *See generally Damron v. Rob Fork Min. Corp.*, 945 F.2d 121, 124 (6th Cir.1991) (employing NLRB factors to define the phrase "reasonable expectation of recall").

## A. *Seasonal exemption*

■ Defendant claims that the WARN Act does not require notice for the employees laid off on June 17, 1991 because those employees are "seasonal." Defendant's answer to amended complaint, at ¶ 67. Defendant's use of the term "seasonal" is misleading. There is no separate section of the statute pertaining to "seasonal" employees. Defendant apparently seeks protection under the exceptions set forth in 29 U.S.C. § 2103. In framing this issue, this court must bear in mind that exceptions from remedial acts are to be construed narrowly, *Olsen v. Lake Country, Inc.*, 955 F.2d 203, 206 (4th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1587, 118 L.Ed.2d 306 (1992), and that defendant bears the burden of proving that the

conditions of the sought-after exception have been met, 20 C.F.R. § 639.9.

To qualify for an exception pursuant to 29 U.S.C. § 2103(1), defendant must show that the closed facility was temporary *and* that the affected employees knew, at the time of hiring, that their employment was limited to the duration of the facility.

### 1. *Temporary Facility*

Specifically, the WARN Act does not apply to a plant closing if "the closing is of a temporary facility or the closing or layoff is the result of the completion of a particular project or undertaking...." 29 U.S.C. § 2103(1). In defining temporary, one looks to "the nature of the project...." Worker Adjustment and Retraining Notification Act, 54 Fed.Reg. 16,042–01 (1989), (*codified at* U.S.C. § 2101 *et seq* ). Generally, "a project must be for a 'defined and limited' period and must be been begun with 'an announced and ascertainable duration and a terminal point.' *Id.* However,

the duration and terminal point of many temporary projects may not be capable of being precisely defined at the beginning of the project due to the vagaries of other conditions and other factors. What is important is that it be clear at the outset that upon the completion of some defined undertaking, the project will be complete.

*Id.* For example,

[c]ertain jobs may be related to a specific contract or order. Whether such jobs are temporary depends on whether the contract or order is part of a long-term relationship. For example, an aircraft manufacturer hires workers to produce a standard airplane for the U.S. fleet under a contract with the U.S. Air Force with the expectation that its contract will continue to be renewed during the foreseeable future. The employees of this manufacturer would not be considered temporary.

20 C.F.R. § 639.5(c)(4).

Further, workers hired on an "as needed" basis who are "laid off indefinitely subject to recall" may also not be considered "temporary." WARN Act, 54 Fed.Reg. 16042–01. Although this employee's work may be temporary, that employee may not be working

on a temporary project, "which is a distinct undertaking not simply an increase in already existing and continuing work." *Id.* Such workers would probably be part-time workers for WARN purposes. *Id.*

Although the regulations do not exempt specific industries,[6] the exemption may cover employees in certain "seasonal" industries.

> Employers in *agriculture and construction* frequently hire workers for harvesting, processing, or for work on a particular building or project. *Such work may be seasonal but recurring . . . .*

20 C.F.R. § 639.5(c)(3) (emphasis added). Defendant interprets this regulation as extending the 29 U.S.C. § 2103(a) exemption to "seasonal" employees and "seasonal" businesses. Such an interpretation contradicts both the regulatory language and the legislative history of the WARN Act. First, the exemption clearly does not apply to *every* employee of these so-called "seasonal" businesses. Employers with seasonal but recurring work

> may also have permanent employees who work on a variety of jobs and tasks continuously through most of the calendar year. Such employees are not included under this exemption.

20 C.F.R. § 639.5(c)(3). Second, an employer's assertion that work is temporary does not make it so. *See* 20 C.F.R. § 639.5(c)(3) ("Giving written notice that a project is temporary will not convert permanent employment into temporary work, making jobs exempt from WARN").

Third, defendant's use of the term "seasonal" is especially misleading in light of the legislative history of the Act. The Senate Amendment to the WARN Act defined a "seasonal employee" as an employee who works less than three months per year on work that is seasonal in nature. Conference Report on Omnibus Trade and Competitiveness Act of 1988, H.R.Conf.Rep. 576, 100th Cong., 2nd Sess. (1988), *reprinted in* U.S.C.C.A.N. 1547. The Congressional conferees eliminated this "seasonal" distinction and included these employees with part-time

employees. *Id.; Solberg v. Inline Corp.,* 740 F.Supp. 680, 684–85 (D.Minn.1990) (discussing "seasonal" employees as part-time employees). Thus, although a business may be *"seasonal,"* the pivotal question is still whether the work is *temporary.*

Defendant does not directly address this requirement except to assert that "[t]he seasonal nature of Aircap's business is undisputed." Defendant's memo, at 12. Based on the preceding discussion of the WARN Act, this court finds that defendant's business does not qualify as a "temporary facility" under the WARN Act nor is the plant closing the "result of the completion of a particular project or undertaking. . . ." 29 U.S.C. § 2103(1).

First, this court finds that the Manning facility is comparable to the aircraft manufacturer used as an example in 20 C.F.R. § 639.5(c)(4). Like the aircraft manufacturer, defendant's contracts were renewable. 20 C.F.R. § 639.5(c)(4). Employees of such businesses are not considered temporary under the Act. *Id.*

Second, this court finds that the Manning facility is not comparable to the agriculture or construction industries, where employees are hired for discrete projects. *See* 20 C.F.R. § 639.5(c)(3). These employees were hired for the "year," and not for a specific contract or project.

Third, although defendant's sales and production may fluctuate according to the season of the year, the Act does not exempt "seasonal" businesses or "seasonal" employees. *See supra* this Order, at 12–13. Thus, defendant fails to meet the first requirement of the 29 U.S.C. § 2103(1) exception.

### 2. *Employees' Perception*

The defendant must also show that the affected employees were hired with the understanding that their employment was limited to the duration of the facility or the project or undertaking. . . .

29 U.S.C. § 2103(1). The limited nature of the employment must have been clearly stat-

---

**6.** DOL considered and rejected industry-specific exemptions. *See* WARN Act, 54 Fed.Reg. 16,- 042–01.

ed to the employees at the time of hire. H.R.Conf.Rep. No. 576, 100th Cong., 2nd Sess. 1051, U.S.Code Cong. & Admin.News 1988, 1547, 2084 (1988). However, an employer cannot avoid the requirements of the WARN Act by

> periodically telling workers that their jobs will last only until completion of a particular project or undertaking, when both employer and employees expect and intend to continue the employment relationship indefinitely.

H.R.Conf.Rep. No. 576, 100th Cong., 2nd Sess. 1051, U.S.Code Cong. & Admin.News 1988, 2084 (1988). The employees must also *understand* that their employment is limited to the duration of the project *at the time of hire.* 20 C.F.R. § 639.5(c).[7] "The test of clear communication focuses on the understandings of the affected employees in general, not on whether each individual employee understood the temporary nature of the project or facility." WARN Act, 54 Fed.Reg. 16042–01.

Regarding subclass A, which includes employees who were never laid off, defendant first argues that there was no guarantee that any of these employees' jobs would continue. Defendant points out that Mrs. Myers, the personnel director, testified at deposition that she did not know if her own job would continue from one season to the next. *See* defendant's memo, at 13. However, this assertion does not address whether defendant clearly communicated the allegedly "temporary" nature of the employment to the em-

ployees at the time of hire. Further, this court will not base a finding on the perception of one individual. *See* WARN Act, 54 Fed.Reg. 16042–01. Defendant's argument on this issue is fallacious.

Second, defendant argues that certain employees in subclass A performed odd jobs on an "as needed" basis and that "even though they weren't technically laid off, they were always subject to being laid off if there was no need for them to do maintenance work." Defendant's memo, at 13. Although this type of work may be "temporary," that does not mean that these employees are working on a "temporary" project as defined in the statute. *See* WARN Act, 54 Fed.Reg. 16042–01. Defendant has not shown that these workers were part-time nor that their work was a "distinct undertaking not simply an increase in already existing and continuing work." *Id.*

Subclass A includes "permanent employees who work on a variety of jobs and tasks continuously through most of the calendar year." 20 C.F.R. § 639.5(c)(3). Even where a project is clearly temporary, such "core" employees do not fit within the 29 U.S.C. § 2103(1) exemption. *See, e.g.* WARN Act, 54 Fed.Reg. 16042–01.[8] These employees are entitled to notice and do not fall under the temporary project exemption. 20 C.F.R. 639.5(c)(3).

Regarding subclasses B and C, defendant is required to show that it clearly told employees that their employment was temporary, *at the time of employment.* Except for

---

**7.** (1) No notice is required ... [if] *the affected employees were hired with the understanding that their employment was limited to the duration of the facility or the project or undertaking.*

(2) *Employees must clearly understand at the time of hire that their employment is temporary.* When such understandings exist will be determined by reference to employment contracts, collective bargaining agreements, or employment practices of an industry or a locality, but the burden of proof will lie with the employer to show that the temporary nature of the project or facility was clearly communicated should questions arise regarding the temporary employment understandings.
(3) Employers in agriculture and construction frequently hire workers for harvesting, processing, or for work on a particular building or project. Such work may be seasonal but re-

curring. Such work falls under this exemption *if the workers understood at the time they were hired that their work was temporary.* In uncertain situations, it may be prudent for employers to clarify temporary work understandings in writing when workers were hired.
20 C.F.R. § 639.5(c) (emphasis added).

**8.** Commenters in the shipbuilding industry referred to their "core staff" when describing their operations which the commenters claimed were temporary projects. While the Department agrees that the projects described in the comments qualify as temporary projects, if the term "core staff" refers to workers who remain on the payroll and move from project to project, the temporary project exemption would not apply to those workers because they would not understand that they had been hired to work on a particular project.

testimony regarding employees' perceptions,[9] the only information regarding the initial guidance given to defendant's employees is the personnel handbook. That handbook refers to "temporary" and "permanent" employees. Defendant's memo, at 7 n. 1. According to the handbook, "temporary" employees worked for less than ninety days and therefore were not eligible for benefits. *Id.* A "full-time" employee had been with the company longer than ninety days and was eligible for benefits. *Id.*

Viewing the handbook in the light most favorable to plaintiffs, this court believes that this section of the handbook could give an employee working for longer than ninety days the impression that he or she was a permanent employee. Viewing the facts as presented in the light most favorable to defendant, this court finds that defendant failed to show that it affirmatively informed employees of the temporary nature of their employment at the time of hire. Defendant failed to meet its burden of proof under the statute as to the 29 U.S.C. § 2103(1) exception. Therefore, this court must grant summary judgment for plaintiffs as to this issue on subclasses A, B and C.

### B. *Adequacy of Notice*

■ Defendant asserts that all employees received the following WARN Act notice on June 17, 1991:

This is to advise you that effective at the end of your shift on Monday, June 17, 1991, you will be laid off. Although this is the time of year that we experience our normal seasonal layoff, it is anticipated that this layoff will exceed six months. This information is being provided to you at this time because of the recent unanticipated drastic downturn in orders that we have experienced.

As you know the layoff is affecting a number of employees and you have no bumping rights to other jobs.

Also, in the near future you will be receiving information about your option to continue your health insurance coverage.

If you have any questions regarding this layoff or any other matters, please contact our personnel manager, Dick Bridges at 803–435–8441.

Defendant's memo, at 15; plaintiffs' exhibit # 2.[10] Defendant asserts that this notice is adequate because plaintiffs would not normally be rehired until the fall and that plaintiffs, in effect, received sixty days advance notice.

First, this argument does not address the members of subclass A, who had never been laid off in the past. Second, this assumption is contrary to the clear language of the Act. The Act requires that "[a]n employer shall not order a plant closing or mass layoff *until the end of a 60–day period after the employer serves written notice of such an order....*" 29 U.S.C. § 2102(a) (emphasis added). Notice must precede the closing of the plant or mass layoff by sixty days.[11] The fact that the employees may not have been employed by the defendant during that time is irrelevant. *Cf. United Steelworkers v. North Star Steel,* 809 F.Supp. 5, 8 (M.D.Pa. 1992) (the company did not give advance notice and therefore was responsible for sixty days of pay, not excluding weekends). This court finds the timing of this notice does not comply with the requirements of the WARN Act. *Cf.* 20 C.F.R. § 639.4(b) ("A layoff extending beyond 6 months from the date the layoff commenced for any other reason shall be treated as *an employment loss from the date of its commencement* "). Therefore, this court will grant plaintiffs' motion for summary judgment on this issue.

### C. *Good Faith Exemption*

■ An employer who violates the WARN Act is not necessarily required to pay damages to its employees so long as it makes a

9. *See* Defendant's memo, at 4–6, interpreting excerpts from deposition testimony of Ernest Manning (subclass A), Sara Bracey (subclass B), and James Scott (subclass C).

10. Defendant also filed notice of the layoff with the South Carolina Employment Security Com-

mission. Defendant's answer to amended complaint, at ¶ 57.

11. Defendants may be entitled to a reduction in the notification period, as provided in 29 U.S.C. § 2102(b)(1). This court will deal with the "good faith" issue separately.

good faith effort to comply with the Act. 29 U.S.C. § 2104(a)(4).

> If an employer which has violated this chapter proves to the satisfaction of the court that the act or omission that violated this chapter was in good faith and that the employer had reasonable grounds for believing that this act or omission was not a violation of this chapter the court may, in its discretion, reduce the amount of the liability or penalty provided for this section.

29 U.S.C. § 2104(a)(4).

At the summary judgment stage, "[w]here states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not lie." *Overstreet,* 950 F.2d at 937 (4th Cir.1991). This court, therefore, will deny defendant's and plaintiffs' motions for summary judgment as to this issue. This court does not have sufficient information from defendant as to its knowledge about the closure of the Manning facility before making a decision about the good faith exemption pursuant to 29 U.S.C. § 2104(a)(4). Therefore, it is

**ORDERED** that plaintiffs' motion to certify subclasses A and B be **GRANTED** and that the certification be pursuant to Fed. R.Civ.P. 23(b)(1)(B). It is further

**ORDERED** that subclass C be certified pursuant to Fed.R.Civ.P. 23(b)(1)(B). It is further

**ORDERED** that plaintiffs resubmit proposed class notice in accordance with the terms of this order. It is further

**ORDERED** that defendant's motion for summary judgment be **DENIED** and plaintiffs' motion for summary judgment be **GRANTED** as to subclass A, B and C on the issue of the 29 U.S.C. § 2103(1) exemption. It is further

**ORDERED** that defendant's motion for summary judgment be **DENIED** and plaintiffs' motion for summary judgment be **GRANTED** as to the issue of the adequacy of notice required by 29 U.S.C. § 2102(a). It is further

**ORDERED** that defendant's and plaintiffs' motions for summary judgment as to the 29

U.S.C. § 2104(a)(4) "good faith" defense be **DENIED.** It is further

**ORDERED** that the parties prepare for a hearing before this court on the 29 U.S.C. § 2104(a)(4) defense.

**IT IS SO ORDERED.**